IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARK ANTHONY STROMAN,               §
                                    §
              Petitioner,           §
                                    §
VS.                                 §
                                    § Civil Action No. 3:05-CV-1616-D
                                    §
RICK THALER, Director,              §
Texas Department of Criminal        §
Justice, Correctional               §
Institutions Division,              §
                                    §
              Respondent.           §

MEMORANDUM OPINION
AND ORDER

Petitioner Mark Anthony Stroman ("Stroman"), convicted and sentenced to death for capital murder, petitions the court on nine grounds for a writ of habeas corpus.[1]  Concluding that all but three grounds are procedurally barred and that Stroman is not entitled to relief on the remaining grounds under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, the court denies his petition and dismisses this action with prejudice.

---

[1]As the court explains below, the first ground of Stroman's amended petition is presented solely as a gateway for consideration of procedurally-defaulted claims, not as an independent ground for habeas corpus relief. For clarity, and for purposes of following the numbering system that Stroman uses, the court will refer to nine grounds rather than eight.

I

A

On October 4, 2001 Stroman shot and killed Vasudev Patel ("Patel") in the course of attempting to rob Patel at the gas station that he operated.  A store security camera graphically captured the attempted robbery and murder.  When Stroman entered the station early that morning, he immediately demanded money from Patel.  Patel reached for a .22 caliber pistol that he kept under the cash register, but he did not retrieve it.  Stroman then shot the unarmed Patel in the upper middle of his chest, causing Patel to fall to the floor.  The surveillance video showed that while Patel lay dying on the floor, Stroman was unable to open the cash register.  Stroman demanded that Patel "open the register or I'll kill you," and "open this register now or I will blow your brains out."  Tr. 19:24.[2]

Stroman later described the offense, and his motives and preparation for it, to a fellow prisoner, Melquaides Gonzales ("Gonzales").  Gonzales testified at Stroman's trial that Stroman told him he had "been in the store two or three times previously to check it out and he didn't see any cameras."  *Id.* at 18:151. Stroman admitted that he intentionally killed Patel with a .44 chrome-plated "big long pistol."  *Id.* at 151 and 155.

---

[2]Citations to "Tr." are to the volume and page of the transcript of Stroman's trial.

Before Stroman murdered Patel, he took this pistol, without permission, from the home where he was staying.  The vehicle that Stroman was driving at the time of the offense was later found with a paper temporary buyer's license plate displayed on the back and two metal license plates in the trunk.  The police also recovered from Stroman's vehicle and residence various automatic and semi-automatic weapons, ammunition, and a ballistic vest.

The murder of Patel was the last of a series of violent crimes that Stroman committed following the terrorist attacks of September 11, 2001 against those whom he considered to be of Middle Eastern descent.  On September 15, 2001 Stroman murdered Waqar Hasan ("Hasan") by shooting him in the head as Hasan grilled hamburgers in his Dallas store.  Stroman later told Gonzales that his murder of Hasan was his ninth crime of this type.  Stroman also demonstrated racial motives for the killing, and stated that he was a member of the Aryan Brotherhood, had a .44 pistol and some automatic weapons, and intended to go to a particular shopping mall and start shooting everybody because of all of the "rag heads" there.  Tr. 19:129-130.

On September 21, 2001 Stroman shot Raisuddin Bhuiuian ("Bhuiuian") in the face as Bhuiuian worked in a convenience store and service station.  Unlike the murder of Patel, the crimes against Hasan and Bhuiuian did not involve robbery.  Stroman admitted to all of these crimes and lacked remorse for any of them,

- 3 -

claiming that he had performed a patriotic duty.   Regarding his
murder of Patel, Stroman told Gonzales that his country "hadn't
done their job so he was going to do it for us."   Tr. 18:151.

B

On November 15, 2001 Stroman was charged with capital murder:
murdering Patel in the course of committing and attempting to
commit robbery.   On April 4, 2002 a jury found him guilty.
Following the punishment phase, and based on the jury's answers to
the special issues, the trial court sentenced Stroman to death.   On
November 19, 2003 the Texas Court of Criminal Appeals ("TCCA")
affirmed his conviction and sentence on direct appeal.   *See Stroman
v. State*, 2003 WL 22721137, at *3 (Tex. Crim. App. Nov. 19, 2003)
(not designated for publication).   Stroman petitioned for a writ of
certiorari, which the Supreme Court of the United States denied on
June 28, 2004.   *Stroman v. Texas*, 542 U.S. 939 (2004).

While Stroman's appeal was pending, he filed on November 13,
2003 an application in Texas state court for a writ of habeas
corpus.[3]   Having previously concluded that no evidentiary hearing
was necessary, the state habeas court on May 26, 2005 entered its
findings of fact and conclusions of law, recommending that the
application be denied.   *Ex parte Stroman*, No. F01-40949-V(A) (292nd

---

[3]"In Texas, habeas proceedings run concurrently with direct
appeal." *Hatten v. Quarterman*, 570 F.3d 595, 599 (5th Cir. 2009)
(citing Tex. Code Crim. Proc. Ann. art. 11.071 § 4(a)).

Dist. Ct., Dallas County, Tex.).[4]  On July 27, 2005 the TCCA denied the application based on the state habeas court's findings and conclusions and on its own review of the record.  *Ex parte Stroman,* No. WR-62,298-01 (Tex. Crim. App. July 27, 2005) (per curiam) (unpublished order).[5]

On July 24, 2006[6] Stroman filed in this court a petition for a writ of habeas corpus, seeking relief on the following four[7] grounds:

1.   Stroman was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to challenge prospective juror Janet Gurley.

2.   Stroman was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to object to prejudicial hearsay during the punishment phase of the trial.

3.   The cumulative errors caused by counsel's deficient performance violated Stroman's right to due process.

4.   The death penalty violates evolving standards of decency under the Eighth Amendment's prohibition of

---

[4]"Texas trial courts only make recommendations to the [TCCA] but do not rule on habeas petitions."  *Id.* at 599 n.3 (citing *Ex Parte Brown,* 205 S.W.3d 538, 546 (Tex. Crim. App. 2006)).

[5]Throughout the remainder of this memorandum opinion and order, except as the context otherwise requires, the court will refer to the "state habeas court" as a single tribunal, although it recognizes that the TCCA independently determined that habeas relief should be denied.

[6]Stroman filed a corrected brief on July 25, 2006.

[7]Stroman numbered these as three grounds, but the first ground consisted of two parts.

cruel and unusual punishment.
Respondent answered on November 29, 2006.

Following repeated *pro se* complaints by Stroman about his appointed federal habeas counsel (who was himself a replacement for Stroman's first appointed counsel), the magistrate judge on March 22, 2007 appointed another lawyer to represent Stroman. Represented by new counsel, Stroman obtained leave of court for an extension of time through October 18, 2007 to file an amended petition. He filed the amended petition on September 29, 2007.

Stroman included in his amended petition a motion for an evidentiary hearing based on circumstances that render the state corrective process ineffective to protect the rights of capital petitioners in Texas.[8] He filed on the same date a motion for equitable tolling, funding, discovery, and evidentiary hearing based on lack of meaningful assistance of federal habeas counsel, and a motion for evidentiary hearing on ineffective assistance of trial counsel. On March 24, 2008 the magistrate judge denied these motions. Stroman objected, and on June 9, 2008 Judge Lynn, to whom this case was then assigned, overruled the objections and denied Stroman's motions. On February 2, 2008 Stroman filed a motion for stay and abeyance, which the magistrate judge denied on August 21, 2008.

---

[8]Stroman filed the same motion on March 17, 2008. Judge Lynn denied the motion in her June 9, 2008 order.

In his amended petition, Stroman asserts the following grounds:

1.  Actual innocence as a gateway to procedurally defaulted claims.

2.  Actual innocence of capital murder.

3.  Violation of his Sixth and Fourteenth Amendment rights to reasonable doubt and the presumption of innocence.

4.  Violation of his Sixth and Fourteenth Amendment rights to a fair defense.

5.  Violation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel based on his trial counsel's failure to timely investigate and introduce condition-of-mind evidence at the guilt/innocence stage.

6.  Violation of his Sixth and Fourteenth Amendment rights to effective assistance of counsel based on his trial counsel's failure to timely investigate and develop crucial evidence and to present an effective theory.

7.  Stroman was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to challenge prospective juror Janet Gurley during voir dire.

8.  Stroman was denied effective assistance of counsel under the Sixth and Fourteenth Amendments when his trial counsel failed to object to hearsay.

9.  Stroman is denied his right to be free from cruel and unusual punishment under the Eighth Amendment.

The first ground is presented solely as a gateway for the consideration of procedurally-defaulted claims (ground 2-6), and not as an independent ground for habeas corpus relief.  Grounds 7,

8, and 9 were originally grounds 1, 2, and 4 of his petition.[9]

On January 28, 2008 respondent filed a motion to dismiss Stroman's amended petition.   The magistrate judge filed his findings, conclusions, and recommendation on August 21, 2008. Respondent filed objections on August 26, 2008, and Stroman filed objections on October 13, 2008.[10]   On July 1, 2009 this case was transferred to the undersigned's docket, and on September 4, 2009 the court heard oral argument.

II

Stroman's habeas petition is governed by AEDPA.   28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim——
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

---

[9]He dropped ground 3 of his petition (cumulative error).

[10]Because review of the magistrate judge's recommendation is *de novo*, the court is denying Stroman's amended petition based on this memorandum opinion and order, without considering the magistrate judge's findings, conclusions, and recommendation.

State court proceeding.

*Id.* This court's determination requires deference to the state habeas court's adjudication of Stroman's claims unless the adjudication is flawed under at least one of these provisos. *See, e.g., Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir.), *petition for cert. filed*, (U.S. June 29, 2009) (No. 09-5070). "[A] federal court's review of a claim adjudicated in a state court is deferential[.]" *Summers v. Dretke*, 431 F.3d 861, 868 (5th Cir. 2005).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant [a writ of habeas corpus] if the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A 'run-of-the-mill state-court decision applying the correct legal rule' would *not* fit within this exception as 'diametrically different' or 'opposite in character or nature' from Supreme Court precedent." *Beazley v. Johnson*, 242 F.3d 248, 256 (5th Cir. 2001) (quoting *Williams*, 529 U.S. at 406).

"Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.   "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.   "A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable." *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001).   "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410.   "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "[A] federal court is not to substitute its judgment for that of the state court.   Rather under AEDPA, federal habeas relief is proper only if the state habeas court applied federal law in an 'objectively unreasonable' manner." *Schaetzle v. Cockrell*, 343 F.3d 440, 447 (5th Cir. 2003).

Stroman's ineffective assistance claims present mixed questions of fact and law. *See, e.g., Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998) (holding that both prongs of the test of *Strickland v. Washington*, 466 U.S. 668 (1984), "present a mixed

question of law and fact"). "'[M]ixed questions of law and fact are reviewed under § 2254(d)(1)[.]'" *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001) (quoting *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998)). This means that Stroman must demonstrate that the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

"'[A] federal habeas court is authorized by Section 2254(d) to review only a state court's "decision," and not the written opinion explaining that decision.'" *Summers*, 431 F.3d at 868 (quoting *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003); *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (per curiam) (en banc)); *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008) ("[W]e review only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." (citing cases), *cert. denied*, ___ U.S. ___, 129 S.Ct. 2383 (2009)).

"Factual findings of the state court are presumed to be correct[.]" *Gardner v. Johnson*, 247 F.3d 551, 557 (5th Cir. 2001). A federal habeas court must "defer to them unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* (internal quotation marks omitted) (quoting *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000)). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to

those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) (citing cases). "When challenging a state court's factual determinations, a petitioner must rebut this presumption of correctness by 'clear and convincing evidence.'" *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998) (quoting 28 U.S.C. § 2254(e)(1)).

III

The court must first decide whether Stroman's grounds 2 through 6 are procedurally barred and whether ground 1 is a sufficient gateway through which he can present claims that would otherwise be procedurally defaulted.

A

Respondent maintains that grounds 2 through 6 of Stroman's amended petition are unexhausted and procedurally barred.[11] Stroman does not contend that these grounds are exhausted. Instead, he seeks to excuse the exhaustion requirement and avoid the procedural bar by demonstrating that failure to consider the claims will result in a fundamental miscarriage of justice because he is actually innocent of the offense of capital murder. Alternatively, he posits that circumstances exist under 28 U.S.C.

_____

[11]Each of these grounds relies on the same evidence of the condition of Stroman's mind at the time of the offense and similar theories of diminished responsibility as that presented in support of his actual innocence claims.

- 12 -

§ 2254(b)(1)(B)(ii) that render the state corrective process
ineffective to protect his rights.

B

"Under 28 U.S.C. § 2254(b)(1)(A), a court shall *not* grant
habeas relief unless 'the applicant has exhausted the remedies
available in the courts of the State.'" *Beazley*, 242 F.3d at 263
(quoting § 2254(b)(1)(A)).   A petition containing unexhausted
claims must be dismissed or stayed so that the petitioner can
return to state court to exhaust state remedies.   *See Rhines v.
Weber*, 544 U.S. 269, 277-78 (2005); *Rose v. Lundy*, 455 U.S. 509,
519-20 (1982).  This would be futile, and the federal court should
find claims to be procedurally barred, "if the petitioner failed to
exhaust state remedies and the court to which the petitioner would
be required to present his claims in order to meet the exhaustion
requirement would now find the claims procedurally barred."
*Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Neville
v. Dretke*, 423 F.3d 474, 479-80 (5th Cir. 2005) (holding
unexhausted claims ineligible for stay under *Rhines* when state
court would find them procedurally barred).

Texas law precludes successive habeas claims except in narrow
circumstances. *See* Tex. Code Crim. Proc. Ann. art. 11.071 § 5
(Vernon Supp. 2008).   Under Texas law, a habeas petitioner is
procedurally barred from returning to the Texas courts to exhaust
his claims unless he shows that the factual or legal basis for a

- 13 -

claim was previously unavailable, or he shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id*. Therefore, such unexhausted claims would normally be considered procedurally barred. *See Beazley*, 242 F.3d at 264.

Stroman can avoid the procedural bar "if he falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court held that, under the *Schlup* standard, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536-537 (quoting *Schlup*, 513 U.S. at 327). Such a gateway claim requires "new reliable evidence⸺whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence⸺that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory" in order to make "a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327-328). Further, the *Schlup* standard is "demanding and permits review only in the 'extraordinary' case."

- 14 -

*House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327).

C

Stroman maintains that he is actually innocent of capital murder because he did not act "intentionally" or "knowingly" due to various mental impairments that negate the necessary *mens rea* for capital murder.  Stroman bases this contention on "various mental impairments, including his involuntary drug addiction to methamphetamine, organic brain impairment, posttraumatic stress disorder (PTSD), and history of childhood abuse and neglect."  Am. Pet. 45 (emphasis omitted) (quoting report of Paula Lundberg-Love, Ph.D. ("Dr. Lundberg-Love")).

In accordance with Texas law,[12] the jury was instructed as follows in the charge of the court:

---

[12]Tex. Penal Code Ann. § 6.03 (Vernon 1994) defines the mental states of "intentionally" and "knowingly" as follows:

> (a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> (b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Stroman's jury was also instructed on the specific intent to kill in the course of committing or attempting to commit robbery.

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

State Rec. 5:735.[13] Citing the opinions of Dr. Lundberg-Love, Stroman maintains that he did not act with the culpable mental state of intentional and/or knowing conduct because

> his mental impairments which included childhood neglect, abuse, PTSD, and chronic methamphetamine addiction coupled with a 12-13 day sleepless binge of methamphetamine, resulted in paranoid and delusional behavior and aggression because Mr. Stroman actually believed that he was acting on behalf of the American people to avenge the events of September 11, 2001. Clearly Mark Stroman was delusional as a result of the various mental impairments discussed more fully above. He met the criterion for a significant mental impairment and was devoid of the culpable mental state required by the charged offense, thus making it appropriate for his attorneys to raise his condition of the mind in the guilt/innocence phase of the trial.

Am. Pet. 48 (bold font omitted) (quoting affidavit of Dr. Lundberg-Love).

The court holds that Stroman's evidence is insufficient to establish that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.

---

[13]Citations to "State Rec." are to the volume and page of the state district clerk's record.

Regarding the intent component, this evidence would not permit a reasonable juror to question whether Stroman had the conscious objective or desire to cause Patel's death when he shot him in the chest. Nor could a reasonable juror——particularly in light of the preparations Stroman made to commit this offense——question whether he intended to commit robbery when he demanded money and threatened to kill Patel if he did not open the cash register. Further, considering Stroman's conduct and the statements he made after the murder, the expert opinions on which Stroman relies would not enable a reasonable juror to question whether Stroman acted knowingly, that is, that he was aware that his conduct was reasonably certain to cause Patel's death.

The delusional thinking on which Stroman relies——that he was acting to avenge the terrorist attacks of September 11, 2001——does not negate these elements. Instead, it tends to show motive in forming the requisite intent. *See Jackson v. State*, 160 S.W.3d 568, 572 (Tex. Crim. App. 2005) (holding that evidence that showed that defendant killed his brother because he was so paranoid that he thought his brother "was out to get him" made it even more apparent that defendant intended to cause serious bodily injury or death to his brother, and that evidence of paranoia simply provided motive for the intentional act). Not only does this evidence not provide the sort of new, reliable evidence capable of meeting the demanding standard of *Schlup*, it does not even tend to disprove the

elements of intentional or knowing conduct under Texas law. Therefore, Stroman has not made a sufficient showing of actual innocence to avoid the imposition of the procedural bar.[14]

D

Stroman argues in the alternative that any failure to exhaust state remedies should be excused because circumstances exist under 28 U.S.C. § 2254(b)(1)(B)(ii) that render the state corrective process ineffective to protect his rights. Stroman presents these circumstances as a systemic failure of the state habeas system to provide competent counsel to investigate and present habeas claims to the Texas courts.

The Fifth Circuit has considered and rejected similar claims in a number of opinions, such as *Ruiz v. Quarterman*, 460 F.3d 638 (5th Cir. 2006):

> Ruiz re-characterizes his claim of ineffective habeas counsel by asserting that the State obstructed his efforts to prosecute the claims by appointing incompetent counsel, effectively making his state remedy illusory and, hence, insulating his claims from federal review through the doctrine of procedural default.

_____

[14]Although not mentioned at oral argument, Stroman also argues in his pleadings that state habeas counsel's failure to present these claims to the state habeas court constitutes cause and prejudice to excuse his procedural default under the doctrine established in *Coleman*. As stated in *Coleman*, however, there is no constitutional right to counsel in state post-conviction habeas corpus proceedings. *See Coleman*, 501 U.S. at 752. Accordingly, Stroman cannot rely on constitutionally ineffective assistance of counsel in such proceedings in order to establish cause and prejudice. *See id.; Martinez v. Johnson*, 255 F.3d 229, 240-41 (5th Cir. 2001).

> In Ruiz's view, he would be better off if there had been no state habeas proceeding available or if he had had no appointed counsel. According to Ruiz, this situation resulted from a "structural deficiency" in the state habeas system, rendering that system "absent" or "ineffective to protect [his] rights" under AEDPA and providing cause for his procedural default.  Yet the law of this Court is clear: ineffective state habeas counsel does not excuse failure to raise claims in state habeas proceedings.

*Id.* at 644; *see also Roberts v. Dretke*, 356 F.3d 632, 640 (5th Cir. 2004) (rejecting argument that ineffective state habeas counsel could constitute circumstance under 28 U.S.C. § 2254(b)(1)(B)(ii) to excuse failure to exhaust); *Martinez v. Johnson*, 255 F.3d 229, 238 n.10 (5th Cir. 2001) (holding that "failure to provide 'competent' counsel for a state habeas petition does not fall under the general catch-all exception provided in 28 U.S.C. § 2254(b)(1)(B)(ii)").  At oral argument, Stroman's counsel argued that studies and state-court developments subsequent to *Ruiz* authorize the court to depart from these established precedents.[15] This court is bound by precedents that foreclose Stroman's argument under 28 U.S.C. § 2254(b)(1)(B)(ii).  Grounds 2-6 of his amended

---

[15]Although Stroman's counsel made this argument, she maintained that Stroman is not relying on a theory of individual ineffectiveness of state habeas counsel.  She contended instead that Stroman is complaining of a broken Texas state habeas process. Counsel also cited *Balentine v. Quarterman*, 324 Fed. Appx. 304, 306 (5th Cir. Apr. 13), *petition for cert. filed*, (U.S. July 2, 2009) (No. 09-5128), in which the Fifth Circuit rejected this argument. Regardless how Stroman characterizes his argument, the court must reject it based on settled circuit precedent.

petition are therefore unexhausted and procedurally barred.[16]

## IV

In ground 7, Stroman seeks habeas relief based on the contention that he was denied his right to effective assistance of counsel when his trial counsel failed to challenge prospective juror Janet Gurley ("Gurley") for cause, or to use a peremptory strike to remove her from the jury, thereby depriving him of a fair and impartial jury.

### A

Stroman maintains that, during voir dire, Gurley exhibited strong opinions in favor of the death penalty, including this belief: "I think if [a person killed] once there's a probability of doing it again." Tr. 13:127. Stroman contends that his trial counsel were constitutionally deficient because Gurley's answers clearly revealed a bias against him regarding imposition of the death penalty. He posits that the error is structural and that prejudice is presumed.

The state habeas court addressed Stroman's claim regarding Gurley in findings of fact and conclusions of law nos. 9-20. In pertinent part, the court found that peremptory strikes are limited in number and that the determination of which prospective jurors

---

[16]Respondent maintains that grounds 2 through 6 are barred by the one-year limitations period contained in 28 U.S.C. § 2244(d). The court need not decide whether these grounds are time-barred because it has already concluded that they are unexhausted and procedurally defaulted.

warrant being stricken is inherently strategic.  State Hab. Find. No. 13.  It found that Stroman's counsel could have accepted Gurley as a juror for a number of legitimate reasons.  State Hab. Find. No. 14.  The court then specifically analyzed parts of Gurley's juror questionnaire, finding that counsels' decision to accept her was reasonable in light of the totality of her voir dire examination and the answers on the questionnaire.  State Hab. Find. No. 15.  It found that the questionnaire responses provided solid reasons for believing that Gurley would be a good juror for the defense.  According to the state habeas court, this data, combined with what counsel observed during questioning, supported the required presumption in favor of counsels' approach to selecting Gurley as a juror, and was clearly based on their reasoned judgment as attorneys and on the facts before them.  State Hab. Find. No. 16.

The state habeas court found and concluded, in relevant part, that counsels' decision not to challenge or strike Gurley was a reasonable one, and well within the standards of professionalism required by *Strickland*.  State Hab. Find. No. 18.  And it found and concluded that the result of the proceeding would not have been different but for his counsels' decision not to strike or challenge Gurley.  State Hab. Find. No. 20.

Stroman maintains that the findings and conclusions are not entitled to a presumption of correctness because they are purely

speculative, lack factual support, and/or are contradicted by clear and convincing evidence in the record. He contends that the state habeas court's findings that defense counsel made strategic or reasonable decisions are not entitled to a presumption of correctness because they lack an evidentiary foundation.[17] And Stroman posits that the state habeas court's decision was contrary to and an unreasonable application of *Strickland*.

B

"If a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief if the decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Id.* (citing cases).

"The clearly established federal law that sets the standard

---

[17]In his objections to the magistrate judge's findings, conclusions, and recommendation, Stroman maintains that the state habeas court's findings of fact and conclusions of law relevant to grounds 7 and 8 are not entitled to a presumption of correctness because the state court did not conduct a live evidentiary hearing. Binding precedent, however, upholds the practice of conducting paper hearings and further establishes that the application of the AEDPA presumption of correctness does not depend upon whether a full and fair hearing was conducted at the state level. *See, e.g., Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004); *Valdez,* 274 F.3d at 949-51.

for ineffective assistance claims is [*Strickland*]." *Catalan v.
Cockrell*, 315 F.3d 491, 492 (5th Cir. 2002). Under the *Strickland*
test the following showing is necessary to demonstrate ineffective
assistance:

> First, the defendant must show that counsel's
> performance was deficient. This requires
> showing that counsel made errors so serious
> that counsel was not functioning as the
> "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced
> the defense. This requires showing that
> counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose
> result is reliable.

*Strickland*, 466 U.S. at 687.

> To establish ineffectiveness, a defendant must
> show that counsel's representation fell below
> an objective standard of reasonableness. To
> establish prejudice he must show that there is
> a reasonable probability that, but for
> counsel's unprofessional errors, the result of
> the proceeding would have been different. A
> reasonable probability is a probability
> sufficient to undermine confidence in the
> outcome.

*Williams*, 529 U.S. at 390-91 (citations and quotation marks
omitted) (quoting *Strickland*, 466 U.S. at 688, 694). If Stroman
fails to meet either prong of the *Strickland* test, the court need
not address the other component. *See Strickland*, 466 U.S. at 697;
*Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997). ("Failure to
prove either deficient performance or actual prejudice is fatal to
an ineffective assistance claim.").

Courts "must indulge a strong presumption that counsel's

- 23 -

conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.  Courts must "not fall prey to 'the distorting effect of hindsight' but must be 'highly deferential' to counsel's performance." *Carter*, 131 F.3d at 463 (quoting *Strickland*, 466 U.S. at 689-90).  Moreover, when a defendant seeks a writ of habeas corpus based on ineffective assistance,

> [i]t bears repeating that the test for federal habeas purposes is *not* whether [petitioner] made that showing.  Instead, the test is whether the state court's decision—that [petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim.

*Schaetzle*, 343 F.3d at 444.

Accordingly, to succeed in this court on an ineffective assistance claim, Stroman must at a minimum show that the state habeas court's decision was contrary to, or an unreasonable application of, the standards provided by the clearly established federal law (i.e., *Strickland*).

C

The court holds that the state habeas court's decision that the performance of Stroman's counsel was not deficient is supported by the record and is not contrary to, or an unreasonable application of, *Strickland*.  The court need not therefore address the prejudice prong of the *Strickland* test.

Gurley's juror questionnaire contained several examples——cited by the state habeas court, *see* State Hab. Find. No. 15——of responses that Stroman's counsel could reasonably have concluded evinced that she would be favorable to the defense.   She stated that, although she favored the death penalty, she would "*think long and hard before imposing the death penalty*[,] but if evidence is sufficient to prove guilt I could follow instructions as issued by the Court/Judge."   *Id.* (emphasis added) (quoting questionnaire response).   Gurley also indicated that she would carefully consider the evidence.   Circumstantial evidence would have to be "*very strong*" for her to convict, and she could impose the death penalty based solely on the facts of the crime, "[a]s long as circumstances *leave no room for doubt*."   *Id.* (emphasis added) (quoting questionnaire response).   When Gurley responded to a question that asked that she rate the importance of objectives of punishment, she listed rehabilitation first, deterrence second, and punishment third.   *Id.*

Additionally, although Gurley did offer the opinion about which Stroman complains——"I think if [a person killed] once there's a probability of doing it again," Tr. 13:127——her other responses placed this opinion in a context that supports the state habeas court's decision.   The prosecutor continued his voir dire examination of Gurley with examples "that may indicate otherwise." *Id.* at 128.

Q.      And that's why we ask you, say, when you find him guilty that's only half the story.  You still haven't heard basically anything about that defendant in his past.  Maybe he's never committed another horrible crime before.  May[be] he has no criminal history whatsoever.    Maybe there's just a reason that this is an aberration in his behavior.  And you say guilty, yes; continuing threat, no.

So, could you follow the law and could you make us show through the evidence that he would actually be a continuing threat?  Or again, do you think that if you found him guilty that would always answer special issue number one for you?  And, you know, you just tell me and I'll accept your answer either way, the way you honestly feel.

A.   No.  I'm not sure that if there was other evidence about that individual that was presented that I might even though he's guilty of that particular crime, *I might not think that he would always do that*.

Q.   So you're willing to wait for all the evidence to come in?

A.   *Right*.

Q.   And if the evidence after you hear all of it says yes, beyond a reasonable doubt he's a continuing threat, you say yes. And if the evidence is — says otherwise, you could say no.  Is that right?

A.   *Correct*.

*Id.* at 128-129 (emphasis added).

The prosecutor continued by examining the types of evidence Gurley would use to answer special issue number one (continuing threat), and the meaning of words used in that special issue, such

- 26 -

as "probability," "criminal acts of violence," "society," and any other questions she might have of the prosecutor about special issue number one. *Id.* at 131-33. The prosecutor and defense counsel examined Gurley extensively on the punishment issues for most of the 30-page record of her voir dire. Gurley repeated her commitment to follow the law and consider the evidence presented in the punishment phase. *See id.* at 134 and 140. And she specifically rejected the idea that if she answered special issue number one by finding that Stroman was a continuing threat, and she would automatically answer special issue number two (mitigating reasons for not imposing the death penalty) in favor of the prosecution. *See id.* at 134.

When one of Stroman's attorneys examined Gurley, he began by focusing on special issue number two, attempting to gauge whether Gurley would tend to reject the defense's position on that special issue if she had already found him guilty of capital murder and had answered in response to special issue number one that he was a continuing threat. *See id.* at 142-44. Gurley responded that she did not know where she fit in and that "[i]t would depend on the evidence." *Id.* at 144. In answer to other extensive, detailed questions posed by defense counsel, Gurley consistently responded in ways that evinced her intention to keep an open mind and consider the evidence before answering the punishment phase special issues. *See id.* at 144, 146, 148, 149, and 150.

- 27 -

Accordingly, the state habeas court's decision that the performance of Stroman's trial counsel was not deficient is not contrary to, or an unreasonable application of, *Strickland*. Stroman's ground 7 for habeas relief is denied.

V

In ground 8, Stroman contends that his trial counsel rendered ineffective assistance by failing to object during the punishment phase to prejudicial hearsay testimony, depriving him of his right to confront and cross-examine material witnesses, in violation of his rights under the Sixth and Fourteenth Amendments.

A

The evidence that serves as the basis of Stroman's complaint constitutes two police reports and a psychological report. Sergeant Kenneth Presley of the City of Plano Police Department read to the jury from the narrative portion of an arrest report, dated November 4, 1981, regarding an incident when Stroman was 12-years old. *See* Tr. 19:31-33. Stroman was one of two boys who threatened the victim by showing him a pair of nunchukas and asked for money. *See id.* at 31. When the victim responded that he only had a few pennies, the boy with Stroman struck the victim in the jaw. *See id.* at 32 and 36. Detective Eric Weaver ("Detective Weaver"), also with the Plano Police Department, read from an arrest report concerning the unauthorized use of a motor vehicle by Stroman and another boy that occurred on April 2, 1983, when

Stroman was 13-years old. *See id.* at 41-42. At the conclusion of Detective Weaver's testimony, the prosecution offered State Exhibits Nos. 54 and 55. Stroman's trial counsel had no objection to either exhibit. State Exhibit No. 54, which related to a May 2, 1983 incident about which Detective Weaver testified, had as an attachment a psychological evaluation that was completed at that time. The evaluation stated that, during an interview with Stroman's parents, they reported that he had been in repeated trouble for the last few years and that his difficulties began when he was approximately nine-years old.

Stroman complains that the jury heard inadmissible hearsay about extraneous offenses and from the psychological report, without the opportunity for his counsel to confront and cross-examine the witnesses. He posits that prejudice is presumed. And he maintains that the state habeas court's findings of fact and conclusions of law are not entitled to a presumption of correctness because they are speculative and conjectural, and lack evidentiary support in the record. Stroman argues that the state habeas court's decision was contrary to, and an unreasonable application of, *Strickland*.

After holding that this ground of his state application was procedurally barred,[18] the state habeas court concluded in the

---

[18]Respondent maintains in this court that this ground should be denied as procedurally barred. For a state procedural default to be adequate to bar federal review, the state procedural rule

alternative that Stroman had failed to satisfy either prong of the
*Strickland* test.    State Hab. Find. Nos. 160 and 163.    The court
focused on the strategic and tactical nature of counsels' decisions
not to object to the evidence but to use it to support Stroman's
defensive theory at the punishment phase, and on those portions of
the record showing that his counsel reasonably decided for
strategic reasons not to object to this evidence.

    In the context of addressing Stroman's ground three (that his
trial counsel were ineffective for failing to correct the
prosecutor's alleged false statements about his 1981 juvenile
adjudication), the state habeas court found "that the most

_____

"must have been 'firmly established and regularly followed' by the
time as of which it is to be applied." *Ford v. Georgia*, 498 U.S.
411, 424 (1991); *see also, e.g., Busby v. Dretke*, 359 F.3d 708,
718-19 (5th Cir. 2004).  It does not appear that a state procedural
default for failure to raise an ineffective assistance of trial
counsel claim in the direct appeal was regularly followed and
sufficient to bar federal habeas review.  Instead, the general
practice appears to have been that such claims were not to be
raised on direct appeal, where review was limited to the trial
record, but instead were to be presented in a habeas corpus
proceeding, where the record could be properly developed.
Discussing ineffective assistance of counsel claims, the TCCA has
reaffirmed "[a]s we have done many times before . . . that the
record on direct appeal is usually inadequate to address
ineffective assistance claims." *Roberts v. State*, 220 S.W.3d 521,
533 (Tex. Crim. App.), *cert. denied*, ___ U.S. ___, 128 S.Ct. 282
(2007).  "Direct appeal is usually an inadequate vehicle for
raising such a claim because the record is generally undeveloped."
*Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)
(citing *Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App.
1999)).  Accordingly, the court concludes that the state rule on
which respondent relies does not appear to have been firmly
established and regularly followed at the time of Stroman's direct
appeal, and the rule is therefore insufficient to procedurally bar
federal habeas review of this ground of Stroman's petition.

significant aspect of defense counsels' mitigation theory at the
punishment phase was to show that [Stroman's] deprived youth made
him worthy of mercy and [Stroman's] wayward commission of criminal
offenses as a child was part of that defense." State Hab. Find.
No. 117. Specifically addressing ground four (the claim, as here,
that his counsel were ineffective for failing to object to these
three matters), the state habeas court found, in pertinent part,
that the cited evidence supported trial counsel's mitigation
strategy. *See, e.g.,* State Hab. Find. Nos. 149, 151, and 154-157.
The court found, in pertinent part, that Stroman's counsel sought
to use the offense reports about the two juvenile offenses to make
significant points about his background. *See* State Hab. Find. No.
151. It cited as an example that counsel used the cross-
examination of Detective Weaver to highlight that Stroman "most
likely stole the car because he was running away from an abusive
home life for the eleventh time." *Id.* And it found that, like the
1981 and 1983 police reports, the psychological report helped the
defensive theory during the punishment phase. State Hab. Find. No.
154. The court concluded that choosing not to object to the
psychological report "was within the broad range of acceptable
strategies available to defense counsel at trial." State Hab.
Find. No. 155. It noted that, during closing argument, defense
counsel used the report to make a plea to the jury, that it was an
important part of the defense's overall theory to show that

Stroman's problems were largely due to his troubled youth, *see* State Hab. Find. No. 156, and that the report supported the defensive theory. *See* State Hab. Find. No. 157.

                                    B

The court holds that the state habeas court's decision that the performance of Stroman's counsel was not deficient is supported by the record and is not contrary to, or an unreasonable application of, *Strickland*. The court need not therefore address the prejudice prong of the *Strickland* test.

As the state habeas court pointed out in its findings, and as is apparent from the trial record, Stroman's counsel adopted a mitigation strategy of explaining why Stroman acted as he did and of providing a mitigating context to his troubled youth and the causes for it, such as the abusive and neglectful environment in which he was raised by his parents. This was presented in support of a case for mercy. In fact, in arguing that this same type of evidence was available and should have been presented during the guilt/innocence phase to show Stroman's state of mind at the time of the offense, Stroman recognized that this theory was pursued in the punishment phase to show such mitigating factors as an "untreated behavioral disorder."

> 04-02-02 The punishment phase began. (RR vol.
> 19). Dr. Connell opined: All of "these forces
> . . . acted on [Mr. Stroman] to cause him to
> commit heinous acts of violence. Without the
> combination of abuse and neglect, rejection,
> untreated behavioral disorder, and the effects

> of drug addiction, it is unlikely that he
> would have become a violent person who would
> engage in such acts." Exhibit B: Mitigation
> Report of Mary Connell, Ed.D., ABPP, dated
> 4/2/02, p. 14.

Am. Pet. 91 (ellipsis and brackets in original; bold font and italics omitted); *see also id.* at 40-41, 48-50, 59-60, 68-71, 75, 84, 95, 117, and 126 (asserting this type of evidence to show a lack of *mens rea*).

Accordingly, the state habeas court's decision that the performance of Stroman's trial counsel was not deficient is not contrary to, or an unreasonable application of, *Strickland*. Stroman's ground 8 for habeas relief is denied.

VI

In ground 9, Stroman asserts that his rights under the Eighth Amendment would be violated by the current method of execution used in Texas because it violates the evolving standards of decency reflected in the Eighth and Fourteenth Amendments. Stroman amended this claim to address the impact of *Baze v. Rees*, 553 U.S. ___, 128 S.Ct. 1520 (2008), in which the Supreme Court held that Kentucky's use of the same three-drug protocol in lethal injections does not offend the Eighth Amendment. This ground appears designed to urge the Supreme Court to reconsider its ruling in *Baze*. Stroman has not shown that he is entitled to relief under ground 9, and the court denies habeas relief on this basis.

VII

In various contexts, Stroman maintains that he is entitled to, or that this court should conduct, an evidentiary hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief" under 28 U.S.C. § 2254(d). *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). In making this determination, "the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." 28 U.S.C. § 2254, Rule 8(a). The decision to grant a hearing rests in the discretion of the district court, unless a hearing is barred under 28 U.S.C. § 2254(e)(2) due to a petitioner's failure to develop the factual basis for the claim in state court proceedings. *See Schriro*, 550 U.S. at 468.

The court holds that ground 1 is not presented as an independent ground for habeas relief, and that related grounds 2 through 6 are unexhausted, procedurally barred, and that an evidentiary hearing on such grounds is prohibited under 28 U.S.C. § 2254(e)(2) because they were not developed in the state court proceedings. The court concludes that there is no need for an evidentiary hearing of trial counsel's reasons for not objecting to

- 34 -

the juror forming the basis of the allegations of ground 7 because the record affirmatively shows that the juror was not biased against Stroman, nor is an evidentiary hearing necessary to determine why trial counsel did not object to the hearsay evidence in ground 8 because the record also shows trial counsel's mitigation strategy and how this evidence supported it.  On both grounds 7 and 8, the record undermines these claims and establishes critical elements of these claims against Stroman, as set forth above.  Ground 9 fails to assert facts that would authorize relief in light of *Baze*.  Having carefully examined the pleadings and record, the court concludes that no ground on which Stroman relies warrants convening an evidentiary hearing, and all such requests are denied.

                    *     *     *

Stroman's amended habeas petition is denied, and this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

September 28, 2009.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 35 -